SAMUEL N. KELLEY *v.* ELIZA KELLEY *et al.*

1. CHANCERY PLEADINGS AND PRACTICE. *Administrator.* A bill filed by a creditor of an estate to compel the collection of a debt due to the estate secured by a vendor's lien on land sold by the deceased, is not a bill to sell realty descended, but to collect a personal asset endangered by the negligence or collusive conduct of the administrator.

2. SAME. *Administrator. Heir.* The heir, upon whom has descended the naked legal title to the land sold by his ancestor, holds the title in trust for the vendee and the administrator, and may properly be divested of that title as soon as the purchase-money debt is ascertained to the satisfaction of the administrator, or so as to be conclusively binding on him, and the land sold in satisfaction thereof.

3. SAME. *Infant. Guardian ad litem.* It is irregular to take any step in a cause wherein there is an infant defendant until a guardian *ad litem* has been appointed, but the irregularity will be cured, so

as not even to be error on appeal, if no binding decree is rendered until the infant is properly represented, and the guardian, having the opportunity to object, acquiesces in what has been done, and the court makes a correct decree on the case then presented.

## FROM KNOX.

Appeal from the Chancery Court at Knoxville. W. B. STALEY, Ch.

W. P. WASHBURN for complainant.

A. S. PROSSER for defendants.

COOPER, J., delivered the opinion of the court.

Writ of error sued out by an infant defendant after coming of age. The Referees recommend a reversal of the decree. Both parties have excepted, so as to open the whole case.

The bill was filed April 22, 1870, by Samuel N. Kelley, as a creditor of the estate of Calloway Kelley, deceased, to collect, for the satisfaction of his demand, an asset of the estate in the shape of a debt secured by a lien on land, which, the bill alleges, the administrator "has hitherto failed and refused to proceed to enforce." The intestate had sold to one Roland Miltebarger a tract of land for $1,600 by a contract vesting him with the equitable title, the legal title being retained as security for the price. Only a part of the purchase money had been paid. The heirs and administrator of Miltebarger, he having died intestate after the sale, were made defendants, as were also the administrator and Eliza Kelley, the

only heir of Calloway Kelley, deceased. The prayer of the bill was that the complainant's debt be ascertained, and also the liability of Miltebarger's estate to Calloway's estate, that a decree be rendered for these respective debts, and the lien on the land for the latter debt be enforced, and so much thereof as was necessary be applied to the satisfaction of the complainant's debt. Process was duly served on all the defendants, except two of the Miltebarger heirs, as to whom there was publication as non-residents, and the bill taken for confessed against them. The *pro confesso* was not taken until the defendants had been at the return term allowed until the end of the next term to answer, and had at the next term asked and obtained an extension of three months' time to file answers. At the November term, 1871, the bill was taken for confessed, and a reference made to the clerk to hear proof, and report the amount due from the Miltebarger estate to the administrator of Calloway Kelley for the land. The master reported the balance of said debt to be $778.41, and the land was ordered to be sold therefor, and by the same decree, rendered at the November term, 1871, the master was ordered to ascertain the complainant's demand against the Kelley estate. The land was sold on March 30, 1872, to John W. Cox for $1,100, " he being the highest, best and last bidder, who immediately passed his bid over to Samuel N. Kelley," and he complied with the terms of sale. The master filed his reports on April 16, 1872. He states in his report, ascertaining the complainant's debt at $491.75, that " he

Kelley *v.* Kelley.

notified the parties to attend at his office on the sixth day of April, 1872, with their proofs, in order that said account might be taken, when, the parties attending, the master proceeded to take the following account."

On May 6, 1872, during the term at which the reports were filed, the court, upon the application of the complainant, appointed D. K. Young guardian *ad litem* for Eliza Kelley, a minor defendant, the bill having so stated the fact, "and he, Young, being in court, accepts the appointment." An answer was thereupon filed by the guardian on the same day under oath. The court then heard the cause and confirmed the reports. This decree says: "And the defendant, Eliza Kelley, having answered the bill by D. K. Young, her guardian *ad litem*, since the sale was made, but because it appears to the chancellor that the sale was for the benefit of said minor, and that the said sale overpaid the amount of the vendor's lien, the same is confirmed. "And," continues the decree, "there being no exceptions to the report of the master touching the indebtedness of Calloway Kelley to the complainant, the same is confirmed." A final decree was accordingly rendered.

The writ of error in this case has been sued out and argued upon the idea that the bill was filed under the Code, sec. 2267, by a creditor to reach land descended for the satisfaction of his debt. But this is a misconception of the nature and object of the bill. The complainant, as a creditor of Calloway's estate, came into the chancery court, under a well

recognized head of chancery jurisdiction, to compel the collection of a personal asset for the satisfaction of his demand upon the ground that the administrator was colluding with the debtor, and refusing to collect the debt: *Haywood* v. *Currie,* 9 Baxt., 357. The land sought to be sold was the land of the Miltebargers, not the land [of the intestate, Kelley, which descended to his heir. The only interest of the estate in the land was the vendor's lien for the purchase money, as a mere incident to the debt, which went to the administrator. The heir of Calloway took only the naked legal title to the land in trust for the Miltebargers and the administrator. The only object of having the heir before the court was to divest this legal title, and she lost all interest in the land as soon as the purchase money was paid to the administrator: *Stephenson* v. *Yandle,* 3 Hayw., 109; *Irvine* v. *Muse,* 10 Heis., 477; *Lunsford* v. *Jarrett,* 11 Lea, 195.

The proceedings of the court below, however informal and irregular, are clearly valid as against the administrator of Calloway Kelley's estate, and have been acquiesced in by him. The only beneficial interest the heir had was in the collection of the debt due to her father's estate, which was collected, the land selling for more than the balance of debt. It was the duty of the administrator to see that the amount of this debt, as well as of the complainant's demand, was correctly ascertained. The chancellor and the guardian *ad litem,* the latter of whom filed no exception to the reports, must have thought that

the interests of the ward were properly protected. But if they were mistaken, and the action of the court warranted by the case made as to the infant, the remedy of the appellant was against the administrator and his sureties, or the guardian *ad litem.* It is irregular to take any step in a cause wherein there is a minor defendant until a guardian *ad litem* has been appointed, but the irregularity is clearly cured, so as not even to be error on appeal, if no binding decree is rendered until the infant is properly represented, and the guardian *ad litem,* having the opportunity, acquiesces in what has been done, and the court decrees correctly on the case presented: *Grimstead* v. *Huggins,* 13 Lea, 728; *Ridgeley* v. *Bennett,* 13 Lea, 210; *Livingston* v. *Noe,* 1 Lea, 61. For the presumption is, that the guardian did his duty, and could find no substantial ground of complaint, and the decree is warranted by the case as submitted.

One of the irregularities most dwelt upon by the appellant's counsel is that the master's report of the Miltebarger debt shows that this debt was in the form of notes given after Calloway Kelley's death. But in view of the allegations of the bill, these notes were doubtless renewals allowed by the administrator by collusion with the debtor. So, it appears that some of the claims making up the complainant's demand were assigned after the filing of the bill. But these formal assignments may have been made to authenticate the complainant's title to claims already belonging to him.

Be this as it may, both debts have been validly

established as against the administrator, and the only effect of reversal as to the heir would be to clothe her with the naked legal title to land in trust for the heir of her father's vendee, whose estate had paid the purchase money debt, and for those claiming under them. The result would be a cloud upon the purchaser's title, without the least benefit to the appellant. But the title was properly divested out of her as soon as the purchase money debt was settled with the administrator and the land sold in satisfaction thereof.

The report of the Referees will be set aside, and the decree below affirmed. The appellant will pay the costs of this court.